**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Civil Action No. 21-cv-03419-RM-TPO

GREYSTOKE CONDOMINIUMS ASSOCIATION, INC. a/k/a and insured as Greystoke
Condominiums,

      Plaintiff,

v.

WESTFIELD INSURANCE COMPANY,

      Defendant.

---

**ORDER**

---

      Six Motions are before the Court in this bad faith insurance dispute:

(1)      Plaintiff's Motion to Limit and Preclude Certain Expert Opinions of Keith
Olivera (ECF No. 65);

(2)      Plaintiff's Motion to Limit and Preclude Certain Expert Opinions of
William McConnell (ECF No. 66);

(3)      Defendant's Motion to Exclude Certain Opinions and Testimony of
Charles M. Miller (ECF No. 72);

(4)      Defendant's Motion to Exclude Certain Opinions and Testimony of
Andrew M. Behrens  (ECF No. 73);

(5)      Defendant's Motion for Summary Judgment (ECF No. 74); and

(6)      Plaintiff's Motion for Summary Judgment (ECF No. 76).

The Motions have been briefed and are ripe for review.  (ECF Nos. 68, 69, 70, 71, 81, 83, 86, 87,

89, 91, 97, 98.)  For the reasons below, Defendant's Motion for Summary Judgment is granted,

and the other Motions are denied as moot.

## I.    BACKGROUND

A fire damaged the Greystoke condominium complex on December 21, 2019, prompting Plaintiff to file a claim with Defendant, its insurer.  Defendant assigned Timothy Call as the claim adjuster.  (ECF No. 92, ¶ 2.)  Mr. Call retained Grecco Construction Consultants to assist with investigating the loss; Grecco assigned the claim to John Collisson.  (*Id.*)  Plaintiff retained Brian Johnson of Hard Hat Contractors as a general contractor.  (*Id.* at ¶ 3.)

Over the next two-and-a-half months, three joint inspections of the property took place, and the parties exchanged preliminary estimates.  (*Id.* at ¶¶ 3, 4, 5, 7, 10, 11, 13.)  Defendant issued an initial payment of $704,491.35 on March 18, 2020.  (*Id.* at ¶ 14.)

While continuing to process the claim, the parties faced additional complications associated with the Covid-19 pandemic.  (*Id.* at ¶¶ 17, 18.)  Following a fourth joint inspection, Grecco produced another revised estimate, and Defendant issued an additional payment of $6,651.36 in November 2020.  (*Id.* at ¶¶ 33, 40.)

In January 2021, Plaintiff retained Adjusters International/Matrix Business Consulting, LLC ("AIMBC") as its public adjuster.  (*Id.* at ¶ 52.)  Following a fifth joint inspection, Plaintiff submitted a revised estimate for about $2.7 million.  (*Id.* at ¶¶ 62, 65.)  Grecco then produced a revised estimate for about $1 million, and Defendant issued an additional payment of $252,277.25 on August 6, 2021.  (*Id.* at ¶ 69.)  Meanwhile, Defendant retained GC3, LLC, as an independent consultant to conduct a comparative analysis of the parties' disparate estimates.  (*Id.* at ¶ 72.)

On August 27, 2021, Plaintiff exercised its right of appraisal under the policy.  (*Id.* at ¶ 76.)  Days later, Defendant issued an additional payment of $260,620.49 on September 1,

2021.  (*Id.* at ¶ 77.)  The parties' chosen appraisers issued an appraisal award of $1,906,717.35

on November 9, 2021.  (*Id.* at ¶ 78.)  Defendant promptly issued an additional payment of

$681,676.90 to fully satisfy the appraisal award.  (*Id.* at ¶ 79.)  Thus, Defendant's payments on

the claim totaled $1,905,617.35.

On December 21, 2021, Plaintiff filed its Complaint, asserting claims for statutory and

common law bad faith breach of insurance contract.  Only the statutory claim remains at issue.

(*See* ECF No. 49.)

## II.    LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir.

2018).  Applying this standard requires viewing the facts in the light most favorable to the

nonmoving party and resolving all factual disputes and reasonable inferences in its favor.

*Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material."  *United States v.*

*Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997).  A fact is "material" if it pertains to an element

of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the

matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether there is a genuine dispute as to a material fact

depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

Where the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of its claim, the burden shifts to it to set forth specific facts showing that there is a genuine issue for trial. *See id.* If it fails to make a sufficient showing to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

## III.    ANALYSIS

Defendant contends it is entitled to summary judgment on the statutory bad faith claim because Plaintiff has adduced no evidence that Defendant unreasonably delayed payment of covered benefits at any time during its handling of Plaintiff's claim, which was fully resolved within two years of the fire.[1] The Court agrees.

To prevail on its claim, Plaintiff must show Defendant delayed authorizing payment of a covered benefit without a reasonable basis. Colo. Rev. Stat. § 10-3-1115(2); *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1186 (Colo. 2018). An insurer's decision to deny benefits is evaluated based on the information before it at the time of the decision, *Schultz v. GEICO Cas.*

---

[1]    Plaintiff concedes that the arbitration award, which Defendant has paid in full, conclusively established the amount of its claim. Thus, Plaintiff has no claim premised on Defendant's outright *denial* of benefits. (*See* ECF No 92, ¶ 80.)

*Co.*, 429 P.3d 844, 847 (Colo. 2018), and the reasonableness of its conduct is measured

objectively based on industry standards, *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343

(Colo. 2004).  "What constitutes reasonableness under the circumstances is ordinarily a question

of fact for the jury.  However, in appropriate circumstances, as when there are no genuine issues

of material fact, reasonableness may be decided as a matter of law."  *Fisher v. State Farm Mut.*

*Auto. Ins. Co.*, 419 P.3d 985, 992 (Colo. App. 2015) (quotation omitted).

In its Motion, Defendant divides the claim into three phases, which it describes as

follows:

- In the first phase (December 2019 to March 2020), the parties participated in three joint inspections and exchanged preliminary estimates.  Defendant made an initial payment of $704,491.35 based on damage known at the time, but both parties understood it was not a complete or final payment.  (ECF No. 74 at 8-10.)

- In the second phase (March 2020 to December 2020), a fourth joint inspection took place, and Defendant communicated primarily with Plaintiff's general contractor, Mr. Johnson. Defendant contends its ability to issue further payment was hindered in part due to materials shortages and other difficulties spawned by the Covid pandemic.  Defendant also contends that Mr. Johnson was slow to obtain engineering plans and building permits, that he experienced difficulties with his email account and pricing software, and that he did not promptly pass along relevant documents when he received them. Following a revised estimate from Grecco, Defendant issued an additional payment of $6,651.36 in November 2020.  (*Id.* at 10-13.)

- The start of the third phase (December 2020 to December 2021) is marked by Defendant's receipt of a revised estimate from Mr. Johnson for about $1.1 million that purported to reflect the full scope of damage.  The following month, Plaintiff hired AIMBC as its public adjuster.  After a fifth joint inspection, AIMBC submitted a proof of loss and a revised estimate from Hard Hat reflecting a claim for more than $2.7 million. Following another estimate from Grecco for about $1 million, Defendant issued an additional payment of $252,277.25.  Plaintiff invoked the policy's appraisal provision soon afterwards, and Defendant issued another payment of $260,620.49.  Within a month, the appraisers agreed on an award of about $1.9 million, and Defendant promptly satisfied its outstanding obligation on the claim, $681,676.90.  (*Id.* at 13-19.)

5

In its Response, Plaintiff mostly disregards Defendant's three-phase framework, arguing broadly that Defendant caused a "nearly two-year delay in disbursing over $1.1 million in covered benefits." (ECF No. 81 at 5.) More specifically, Plaintiff argues Defendant delayed paying covered benefits by deliberately disregarding insurance industry standards, relying on Mr. Collisson as a consultant, and failing to engage critical experts. According to Plaintiff, the evidence demonstrates, at minimum, genuine issues of material fact.[2]

As a threshold matter, the Court finds Plaintiff cannot meet its burden of showing unreasonable delay merely by pointing to the fact that Defendant ultimately paid over $1.1 million more in benefits than its initial payment in March 2020.[3] Although insurers must promptly pay undisputed covered benefits, *see State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018), nowhere has Plaintiff identified any such *undisputed* amounts on which Defendant withheld payment. Further, the Court finds that the timespan between Defendant's initial and final payments—without more—does not give rise to an inference that Defendant acted unreasonably in this case. Notably, the amount of the appraisal award lies comfortably between the parties' final estimates preceding the appraisal. Moreover, from November 2020 through September 2021, Defendant continued to communicate and exchange

---

[2] In contravention of this Court's Civil Practice Standards, Plaintiff's Response purports to incorporate by reference the arguments Plaintiff advanced in its own Motion for Summary Judgment. *See* Civ. Practice Standard IV.A ("Absent leave of Court, a motion response, reply or other filing not . . . incorporate by reference another motion or filing . . . ."). Although Defendant pointed this out in its Reply, Plaintiff has not sought to amend or supplement its Response. In any event, for the reasons stated in this Order, the Court finds the arguments in Plaintiff's Motion for Summary Judgment do not cure the deficiency of its Response or otherwise preclude granting summary judgment in Defendant's favor.

[3] Plaintiff concedes that Defendant "timely issued payment for initial demolition costs on March 2020" (ECF No. 81 at 6)

estimates with Plaintiff, while issuing supplemental payments totaling $519,449.10. Though these undisputed facts do not prove Defendant's claim handling was eminently reasonable in every respect, they significantly undermine Plaintiff's position to the extent it is premised on merely the duration between Defendant's initial and final payments. Therefore, under the circumstances presented, the Court finds that the timing of Defendant's final payment is insufficient to create a genuine issue for trial.

The Court turns now to Plaintiff's more specific arguments. Plaintiff contends Defendant failed to meet industry standards by "establishing the scope of repairs." (ECF No. 81 at 5.) However, Plaintiff cites no legal authority defining this concept. Indeed, the sixteen-page Argument portion of Plaintiff's Response is noteworthy for its dearth of legal authority. Aside from a single citation to *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 F.3d 501, 506 (Colo. 2018), for the settled proposition that insurers have a duty to pay undisputed benefits, Plaintiff cites no case law whatsoever, relying mainly on conclusory and circular excerpts from its own experts' reports. However, such conclusory testimony fails to create a triable issue of fact on the question of unreasonableness. *See High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1181, (10th Cir. 2019). If Plaintiff is aware of cases concluding that conduct analogous to Defendant's handling of this claim is unreasonable, it would have been better served by presenting them to the Court. In any event, the Court is not persuaded that the vague and conclusory statements Plaintiff cites from its own experts attesting to the importance of establishing an accurate scope of repairs are enough to raise a genuine issue for trial.

Plaintiff also argues it was unreasonable for Defendant to rely on Mr. Collisson, citing his lack of qualifications and experience. But although Plaintiff broadly criticizes Mr. Collisson's

estimates as incomplete, it has not identified any specific amounts that were unreasonably

omitted.[4]  At this stage, Plaintiff bears the burden of setting forth specific facts demonstrating a

genuine issue for trial.  *See Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420

P.3d 223, 229 (Colo. 2018) ("In responding to a properly supported summary judgment motion,

. . . the nonmoving party may not rest on mere allegations or demands in its pleadings but must

provide specific facts demonstrating a genuine issue for trial.").  Plaintiff's assertion that

Defendant acted unreasonably to the extent it relied on Mr. Collisson's assistance in processing

Plaintiff's claim is supported by no specific facts, only speculation.  Thus, the Court discerns no

genuine issue of material fact with respect to Mr. Collisson's role in handling the claim.

Plaintiff's broader contention that Defendant failed to conduct an adequate investigation

or "to engage anyone qualified to accurately determine the scope of repairs" (ECF No. 81 at 10)

is also unavailing.  After all, the appraisers were able to agree on the value of Plaintiff's claim in

just twenty-six days, without engaging additional construction experts.  Plaintiff provides no

explanation for this apparent contradiction; instead, it simply insists that Defendant should have

done more to investigate the claim, listing specialized construction experts (e.g., a structural

engineer, a stucco technician, or an industrial hygienist) with whom it believes Defendant should

have consulted.  However, in the absence of any evidence showing what these consultations

would have revealed, this is merely an exercise in speculation—it is not sufficient to demonstrate

---

[4]    Separate from its arguments related to Mr. Collisson, Plaintiff identifies "engineering invoices totaling $17,876.78" that it submitted in December 2020 as evidence of Defendant's "inaction." (ECF No. 81 at 15.)  However, Plaintiff concedes that Defendant's August 2021 payment include engineering fees of over $21,000.  (*Id.* at 15 n.3.)  Further, Plaintiff fails to provide enough relevant context to show how Defendant's handling of this relatively insubstantial portion of its claim was unreasonable.

that Defendant lacked a reasonable basis for the way it handled Plaintiff's claim.

Plaintiff also argues that Mr. Call "misrepresented that an agreement on scope and price had been reached" by him and Mr. Johnson.  (ECF No. 81 at 9.)  This argument stems from the letter Mr. Call sent to Plaintiff along with Defendant's initial payment in March 2020.  The letter includes as an attachment a "copy of the [Grecco] estimate which recaps the scope and agreed price reached by the contractor of your choice, [Hard Hat,] and Grecco."  (ECF No. 82-14 at 1.)  But the letter also explains the replacement cost would be payable once the repairs were completed and that Defendant would "ultimately award and execute the contract for construction to the contractor of [Plaintiff's] choice."  (*Id.*)  The letter further states that "Ordinance and Law upgrades required by local building ordinances" were not included in the current summary.  (*Id.*)  In addition, a contemporaneous email from Mr. Johnson to Plaintiff refers to "the agreement on the [Grecco] estimate," describes the estimate as "a starting point, and not a final number as engineering & code will need to be addressed after the demo, and permitting process," and expressly contemplates further "adjustments to the estimate." (ECF No. 75-17 at 2.)  Thus, the record belies Plaintiff's strained contention that Mr. Call somehow delayed matters by misrepresenting the claim's status.  Plaintiff has failed to substantiate this argument with any other evidence that either party considered the initial payment to be a final settlement of Plaintiff's claim.  Accordingly, Plaintiff has not shown that any statements Mr. Call made in connection with the parties' agreement as to the initial payment create a genuine issue of material facts as to whether Defendant lacked a reasonable basis for its actions.

9

Plaintiff also argues that Defendant unreasonably delayed the claim because it made no additional adjustments for engineering or design during the 514-day period from March 2020 to Aug 2021. (ECF No. 81 at 9-10.) But the record shows that during that period, Defendant communicated frequently with Plaintiff and its agents, participated in two joint inspections, and issued payments of $6,651.36 (November 2020), $252,277.25 (August 2021), and $260,620.49 (September 2021). This level of interaction is more indicative of an ongoing process of settling a complex claim than of unreasonable delay. On this record, Plaintiff cannot survive summary judgment by simply identifying ways in which it believes the claim might have been expedited.

Plaintiff's argument that Defendant tried to close the claim prematurely seems counterintuitive in the context of asserting a claim for unreasonable delay. (*See* ECF No. 81 at 9.) It is also unpersuasive because it is not supported by any pertinent legal authority. Overall, the record shows that efforts to resolve the claim, punctuated by significant payments from Defendant, were ongoing through the point at which Plaintiff invoked the appraisal. Plaintiff highlights the appraisers' ability to resolve the matter within twenty-six days following a single inspection while ignoring the fact that the appraisal award was below Plaintiff's last estimate. Plaintiff does not contend that before the appraisal Defendant had any reason to believe Plaintiff would have accepted the amount of the award as a final settlement. Thus, the Court is not persuaded that Defendant's unsuccessful efforts to settle the claim show that its claim handling was unreasonable. Likewise, in the context of this claim, the Court finds the appraisers' ability to settle the dispute relatively quickly does not show that Defendant acted unreasonably.

Plaintiff's additional arguments rely on a hodgepodge of extracts from the record, including rambling excerpts from Mr. Johnson's testimony (*see, e.g.*, ECF No. 82 at 13-14), that

10

are devoid of meaningful context.  Trial is not warranted simply because the parties could not promptly agree the value of Plaintiff's claim.  Plaintiff's Motion for Summary Judgment offers some additional details demonstrating that the parties disputed the amount of Plaintiff's claim, but it does not rise to the level of showing a genuine issue of material fact precluding summary judgment in Defendant's favor.

Therefore, the Court finds Plaintiff has failed to adduce sufficient evidence to survive summary judgment on its statutory bad faith claim, and Defendant is entitled to summary judgment.

## V.    CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 74) is GRANTED, the other pending Motions (ECF Nos. 65, 66, 72, 73, 76) are DENIED AS MOOT, and Clerk is directed to CLOSE this case.

DATED this 31st day of March, 2026.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge

11